UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LLOYD MARKS,

        Plaintiff,

v.

NEWCOURT CREDIT GROUP, INC.,
CIT GROUP, INC., and NEWCOURT
FINANCIAL USA, INC.,

        Defendants.
_____/

CASE NO. 99-60792

HON. MARIANNE O. BATTANI

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendants Newcourt Credit Group, Inc., CIT Group, Inc., and Newcourt Financial USA, Inc.'s (collectively "Newcourt") Motion for Summary Judgment (Doc. # 104 ). The Court held a hearing on the motion on May 19, 2005, and took the matter under advisement. The Court has reviewed the pleadings and, for the reasons that follow, GRANTS in part and DENIES in part Defendants' motion.

**I. STATEMENT OF FACTS AND PROCEDURAL HISTORY**

Plaintiff Lloyd Marks was employed by AT&T Capital ("AT&T") as President and Chief Operating Officer of AT&T Systems Leasing. As a senior manager, Plaintiff participated in the AT&T Capital Leadership Severance Plan ("the AT&T LSP Plan"), which entitled him to a substantial cash payment if he were terminated for any reason other than just cause--a "qualifying termination" before October 1, 1998. Either outright discharge or constructive discharge, as defined by the AT&T LSP Plan, constituted a qualifying termination.

On January 12, 1998, Newcourt acquired all of the stock of AT&T. Plaintiff learned about the potential purchase in the Fall of 1997, and he began negotiating employment with Newcourt at that time. The negotiations culminated in a letter, dated December 19, 1997,

offering Plaintiff the position of "Strategic Business Leader-Systems Leasing." Defs.' Ex. 9. The letter indicated that Plaintiff would "maintain the terms of [his] employment on *substantially the same terms and conditions* as they existed prior to the Closing." Id. (emphasis added).

Plaintiff accepted employment with Newcourt. He remained the Chief Operating Officer of the Systems Leasing Unit after the merger. As a Newcourt employee, Plaintiff was still covered by the AT&T LSP Plan.

In February of 1999, Plaintiff suffered a heart attack and went on disability leave. In June of 1999, Plaintiff attempted to exercise his rights under the AT&T LSP Plan. He notified Newcourt through a letter from his attorney, that he had suffered a qualifying termination. Specifically, Plaintiff asserted that during 1998, Newcourt had substantially changed and reduced his duties, responsibilities and compensation as a senior manager. Plaintiff concluded that as a result of Defendants' conduct he had been constructively discharged and was entitled to payment under the plan.

Defendants' plan administrators reviewed Plaintiff's claim for benefits and denied it by letter dated June 17, 1999. After Plaintiff exhausted his administrative remedies, he brought suit in Wayne County Circuit Court against Newcourt asserting claims for: breach of contract and constructive discharge (Count I); fraud and silent fraud (Count II); innocent misrepresentation (Count III); fraudulent inducement (Count IV); and breach of the AT&T LSP Plan (Count V). Newcourt removed the case to this Court based on preemption under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1) and diversity of citizenship.

On February 22, 2000, Newcourt filed a motion seeking 1) entry of an order under Fed. R. Civ. P. 52 upholding the plan administrator's denial of Plaintiff's claims for plan benefits; and 2) dismissal of Counts I (breach of contract), II (fraud) and III (misrepresentation) under F.R.C.P. 12(b)(6) based on ERISA preemption. Plaintiff then filed a motion for summary judgment, arguing that Newcourt's denial of his claim for benefits was arbitrary and capricious. The Court granted Defendants' motion to dismiss and for entry of judgment, and denied Plaintiff's corresponding motion for summary judgment, finding that Plaintiff's state law claims for breach of contract (Count I), fraud and

silent fraud (Count II) and innocent misrepresentation (Count III) were preempted by ERISA. The Court subsequently denied Plaintiff's motion for reconsideration, or in the alternative, for leave to amend. Plaintiff's claim for fraudulent inducement of the stock purchase (Count IV) remained.

After discovery was completed, Newcourt filed a motion for summary judgment on Count IV, which the Court granted. Plaintiff appealed, and on September 4, 2003, the Sixth Circuit Court of Appeals reversed this Court's dismissal of Counts I-III, holding that they that were not preempted under ERISA. See Marks v. Newcourt Credit Group, Inc., 342 F.3d 444 (6th Cir. 2003). The case was remanded with instructions to adjudicate among other things, Plaintiff's claim for breach of contract. Id. at 453.

Newcourt subsequently submitted a motion for summary judgment as to the remanded counts of breach of contract, fraud and innocent misrepresentation. The Court awarded Newcourt summary judgment on the fraud and innocent misrepresentation claims. Only Plaintiff's breach of contract claim remains. The parties have completed discovery as to that claim. The following facts bear on the merits of the instant request for summary judgment.

Plaintiff's employment with AT&T Capital was governed by the AT&T Capital Handbook ("Handbook"). Defs.' Ex. 7, 1995 Handbook. The Handbook unambiguously provides that employment is at-will. The relevant provision reads: "The relationship all of us have with the organization is known as "Employment-at-Will." Id. In addition to explaining what that means, the Handbook advises,

> any oral or written statement by any company member that conflicts with anything in this handbook is not binding upon AT&T Capital Corporation. Members who believe that they have been told something that conflicts with anything contained in this handbook or in any AT&T Capital Corporation policy should be aware that *neither the provisions of this handbook nor the provisions of any policy can be modified orally*.

Id., p. 3 (emphasis added).

The Handbook is not the only document governing the employment relationship. Plaintiff also had a series of compensation agreements with AT&T Capital. Each agreement covered a defined number of years and contained information regarding

3

compensation for each year included within the agreement. See e.g. Defs.' Ex. 8, Plaintiff's 1995 Restated and Amended Extended Compensation Agreement. The agreements contained specific provisions advising Plaintiff he would be entitled to nothing if terminated for cause and a discounted value of the amount due under the agreement if terminated without cause. Plaintiff's last compensation agreement expired at the end of 1997. Plaintiff did not enter into a similar agreement with Newcourt. See Pl.'s Dep at 86, 199-20.

The December 19, 1997 letter describes the compensation arrangement for Plaintiff post-merger. It reads in relevant part:

**CASH COMPENSATION**

**1997 Compensation**

> For the remainder of calendar year 1997 your current salary and bonus levels would remain unchanged. Your actual calendar year 1997 bonus has been determined to be $187,000. In addition, as agreed between you and David Banks, you will receive a special 1997 adjustment of $54,965 resulting from a communication misunderstanding.

**1998 Compensation**

> For the period from January 1, 1998 to December 31, 1998, you would receive no less than the following:
>
> Base Salary: $250,000 per annum, payable bi-monthly.
>
> Your 1998 targeted annual bonus would be equal to 75% of your base salary and would be *payable if both you and the company achieve certain target performance levels*. The amount of the bonus you would receive may be higher or lower than the targeted amount, based upon your individual and the Company's performance.
>
> Your 1998 targeted annual bonus will be finalized in conjunction with the Company's 1998 business plan.

**1999 and Subsequent Years Compensation**

> For 1999 and subsequent years, your salary and bonus targets would be subject to annual review and would be based on Newcourt's and its affiliates' ongoing executive compensation policies and practices.

Pl.'s Ex. G, p.2 (emphasis added).

According to Newcourt, Plaintiff did not meet the target performance level in 1998. Consequently, Plaintiff did not receive the targeted bonus. See Pl.'s Dep at 88. During 1998, Plaintiff corresponded with his superiors at Newcourt regarding his 1999 compensation so he could determine whether to file a claim under the AT&T LSP plan. See Defs.' Ex. 10. Plaintiff remained in Newcourt's employ. In February 1999, Plaintiff suffered a heart attack. He did not return to work after his medical leave. Newcourt terminated Plaintiff's employment in August 1999.

## II.  STANDARD OF REVIEW

Fed. R. Civ. P. 56 states that summary judgment "shall be rendered forthwith if the pleadings. . .show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." There is no genuine issue of material fact if there is no factual dispute that could affect the legal outcome on the issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). In other words, the movant must show that it would prevail on the issue even if all factual disputes are conceded to the non-movant. Additionally, for the purposes of deciding on a motion for summary judgment, a court must draw all inferences from those facts in the light most favorable to the non-movant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III.  ANALYSIS

Newcourt advances three bases to support its position that Plaintiff's breach of contract claim must be dismissed. First, Newcourt asserts that Plaintiff was an at-will employee so there was no agreement to breach. In the alternative, Newcourt argues that even if an agreement existed, it did not breach the terms of the agreement. Finally, Newcourt maintains that Plaintiff is precluded from an award for any breach because he failed to mitigate his damages. The Court addresses each argument below.

### A. Nature of the employment relationship

The parties dispute the nature of the employment relationship. According to Newport, Plaintiff was an at-will employee, who could be terminated at any time without

cause. Marks asserts that he had perpetual employment, and Newcourt could not terminate him absent just cause.

The law in this regard is settled. Generally, employment relationships are terminable by either party at his will. Lytle v. Malady, 458 Mich. 153, 163, 579 N.W.2d 906 (1998). Nevertheless, this presumption of at-will employment can be rebutted if Plaintiff presents "proof of either a contract provision for a definite term of employment, or one that forbids discharge absent just cause; an express agreement, either written or oral regarding job security that is clear and unequivocal; or a contractual provision, implied at law, where an employer's polices and procedures instill a legitimate expectation of job security in the employee." Id. at 164.

In this case, the AT&T Handbook specifies that employment is at-will. See Defs.' Ex. 7. Moreover, language in the Handbook cautions employees that oral or written statements to the contrary are not binding on the employer. Consequently, to rebut the unambiguous language, Marks asserts that a just-cause relationship existed prior to the Handbook; that he was not subject to the provision contained therein; that his compensation agreement governed the employment relationship; and that Newcourt's promises of job security defeat the at-will language in the Handbook. Each assertion is discussed below.

### 1. Prior agreements

Marks argues his employment with AT&T Capital was governed by an earlier document, created during his employment with Encore International, a predecessor to AT&T Capital. See Pl.'s Ex. K, the 1989 agreement. That contract provided for a five-year term of employment and provided termination, among other things, in the event of misconduct, harm to the company's reputation or failure to perform job duties. Plaintiff observes that the contract included a just cause provision. According to Plaintiff that provision remained unaltered in subsequent agreements. See Pl.'s Ex. L May 31, 1990 Agreement, Pl.'s Ex. M, 1992 Extended Compensation Agreement with AT&T Systems Leasing Corporation.

Plaintiff's reliance on documents from his employment with Encore International is misplaced. The contracts expired by their own terms well before the events giving rise to this litigation. Moreover, despite Plaintiff's contention that the contracts had just cause

6

provisions, the 1990 Agreement provides that the employer may terminate the agreement "at any time without cause" provided the employer makes payments as provided in the agreement. Pl.'s Ex. L at 8, ¶ C. More importantly, under the relevant severance plan, Marks could have collected when his employment with AT&T Capital ended. There is no question that if Plaintiff were terminated without cause, he would receive compensation. The parties agreement in that regard does not alter his status as an at-will employee.

In the alternative, Marks asserts that as a member of upper management, he was exempt from the at-will provision. Indeed, other upper management employees from AT&T Capital testified that Plaintiff was exempt from the at-will provision contained in the Handbook. According to the Declaration of Ed Cherney, Pl.'s Ex. Q at ¶ 3, 4, Marks, as a senior executive, was "accorded certain special treatment." Cheney asserts that Marks was not subject to discharge "without some good reason." Id. See also Dep. of Patrick Callaghan at 47-8.

Generally, "oral evidence of prior or contemporaneous understandings is inadmissible to vary or contradict an unambiguous writing which is intended to memorialize the complete agreement between the parties." Roberts Associates, Inc v. Blazer Int'l Corp., 741 F Supp 650, 654 (E.D. Mich, 1990), citing NAG Enterprises, Inc v. All State Industries, Inc., 407 Mich. 407, 409, 285 N.W.2d 770 (1979). Here, the unambiguous language in the Handbook not only declares that employment is at-will, it requires that agreements altering the relationship be in writing. Therefore, the testimony of upper management to the contrary fails to meet the requirement articulated in the Handbook and does not create a genuine issue of material fact as to the nature of the employment relationship.

### 2. Compensation agreement

Marks claims that assurances as to his 1999, and subsequent years compensation demonstrate he had perpetual employment. This Court disagrees.

The compensation provisions in the December 19, 1997 letter do not alter Plaintiff's status of at-will employment. The letter does not guarantee Plaintiff employment that would last three years; it merely details compensation terms. There is an implicit assumption that it applies if and only if Plaintiff is still employed. That reading is reflected throughout the letter. For example, the letter advises Marks that he would forfeit any right to an unvested

option should he "cease to be an employee of Newport. . . ." Pl.'s Ex. G. at 5.  In addition, the letter informs Plaintiff that it does not "constitute an employment contract. . . ."  Id.

Again, there is no question that if Plaintiff were terminated without cause, he would receive compensation, but this is not what he is required to show.

### 3. Negotiations

Finally, Marks asserts that in his negotiations with Newport, he was promised employment for as long as he wanted.  According to Plaintiff, when the parties entered into their agreement, it was clear that Plaintiff's employment compensation was to continue as long as Plaintiff wanted, absent just cause for termination.  He discussed with Newport personnel the existing five year business plan he would implement in his new position.  Pl.'s Dep. at 3.  Moreover, Plaintiff testified that he was assured that he would be with Newport until he retired.  Plaintiff asserts that this reassurance was critical because Plaintiff purchased several hundred thousand dollars worth of stock.  Further, under the stock agreement, Plaintiff was prohibited from selling some shares for three years.  Id. at 97-8.  In addition, Plaintiff's acceptance of employment with Newcourt meant he was foregoing a claim under the 1996 AT&T LSP Plan.

Even viewing these facts in the light most favorable to Plaintiff, he cannot show a clear and unequivocal express agreement regarding job security.  First, under the Handbook, such an agreement would have to be written.  Consequently, verbal statements that things will work out do not undermine the written directive, and conversations in which Newcourt's management assured Plaintiff he would be there for the long haul or the long term do not meet his burden.  Expressions of optimistic hope for a long relationship do not create a just cause employment.  Lytle at 164.  In short, Plaintiff's expectation of employment for as long as he wanted was not legitimate.

Plaintiff's argument to the contrary is not persuasive. Plaintiff's assertion that he had an implied contract for employment under the rationale of Rowe v. Noren Pattern & Foundry, Co., 91 Mich.App. 254, 383 N.W.2d 713 (1979), is of no avail.  The facts differ materially from the facts in the instant case.  In Rowe, when the plaintiff gave up his job to work for the defendant, he had only one and a half years left to obtain a vested pension.  In light of that fact, the plaintiff specifically asked about job security.  In response, the defendant assured

the plaintiff that he would have the security of a union contract after a 45-day probationary period. The defendant also told the plaintiff that, under no circumstances, would he be laid off during the initial 45 days. Despite the promise, the defendant laid off the plaintiff during the probationary period. The state appellate court reversed the lower court's holding that the Plaintiff was an at-will employee. The appellate court held that the plaintiff had established a prima facie case of an implied contract. It based its decision on the fact that the Plaintiff gave up a substantial benefit in reliance on the specific promise defendant made to him.

In contrast to the facts in Rowe, Defendant did not make any specific promises that Plaintiff would not be terminated prior to the implementation of a for cause provision. Plaintiff cannot show a clear and unequivocal express agreement regarding job security: Conversations that Plaintiff had with Newcourt during negotiations that assured Plaintiff to the contrary do not amount to a promise of permanent employment, and Plaintiff's expectations in that regard were not legitimate.

In sum, a just-cause employment relationship can arise either by contract or by an employee's legitimate expectations in reliance on company policies. Under a contractual theory, a party must present sufficient proof either of a contractual provision for a definite term of employment or of a provision forbidding discharge absent just cause. Rood v. General Dynamics Corp., 444 Mich. 107, 117, 507 N.W.2d 591 (1993). Plaintiff did not advance evidence of either sufficient to withstand summary judgment. In the alternative, such provisions may become part of an employment contract as a result of explicit promises or promises implied in fact. Id. Oral statements of job security must be clear and unequivocal to overcome the presumption of employment at-will. Id., at 119 (quoting Rowe, 437 Mich. at 645). Again, Plaintiff failed to advance evidence sufficient to withstand summary judgment. None of Plaintiff's arguments, standing alone or viewed together, overcomes the plain language of the Handbook.

### B. Duties under the agreement

The parties contest whether Newcourt breached a contractual duty to Plaintiff in either of two ways. First, whether Newcourt altered Plaintiff's duties to the extent that the contract is violated; and second, whether it reduced Plaintiff's compensation in such a

9

manner as to constitute a breach of Plaintiff's employment contract.  The first issue, in and of itself, cannot sustain a breach of contract claim in light of the Sixth Circuit's observation that Plaintiff "could not demonstrate that he was constructively discharged."  Marks, 342 F.3d at 459, n.4.  The issue nevertheless is relevant to the contention that Newcourt breached the parties' agreement relative to compensation.

The Court finds that questions of fact preclude summary judgment as to whether a breach occurred.  It reaches this conclusion despite Newcourt's assertions that it complied with the compensation and other materials terms of the December 19, 1997 letter; that Plaintiff was paid in accordance with the 1998 compensation schedule; and that no agreement was reached during 1999.

Plaintiff's position, that Newcourt breached a contractual duty when it significantly reduced his compensation, is not undermined, as a matter of law, by the fact that under the terms of the December 1997 letter, his 1998 bonus could be higher or lower than the targeted amount.  Without question, Plaintiff's bonus depended on his individual performance and the company performance.  Newcourt retained discretion with respect to the amount Plaintiff could receive.  Nevertheless, its discretion was not unbridled.

First and foremost, Newcourt was required to continue Plaintiff's employment, in its own words, under "substantially the same terms and conditions" as his employment with AT&T Capital.  There is no dispute that Newcourt altered Plaintiff's duties.  Only the degree to which they were altered is in dispute.  Although the letter indicates that Plaintiff's employment would remain substantially the same, Newcourt correctly observes that it did not promise not to make any changes.  Therefore, it posits that enacting changes to reporting relationships, consolidating redundant functions and making accounting and other business decisions regarding Systems Leasing did not violate the agreement.  Newcourt notes that Plaintiff retained his title of Chief Operating Officer and remained the strategic business leader before and after the merger. In addition, Plaintiff remained the highest ranking person in the Bloomfield Hills office before and after the merger.  See Pl.'s Dep 25, 36-7, 287.  Although a hiring freeze was instituted after the merger, and Plaintiff could no longer hire new employees, he was still in a position to make termination recommendations. Id. at 46, 226.

In contrast to the situation as characterized by Defendants, Plaintiff argues that all of the changes to his job were substantial.  He identifies several facts in support of his position: he lost an entire sales force; he lost oversight of the syndication group; he lost the multimedia function; he lost supervision of the legal staff, accounting department, human resources and data processing; his national sales manager position was eliminated; he lost the ability to fire and fire; and he reported to a lower level member of management.  Plaintiff concludes that this satisfies his duty to show a genuine issue of material fact as to whether his job duties were substantially the same.

The Court finds that, although some alterations to Plaintiff's job duties would be expected post-merger, there is a genuine issue of material fact as to whether his employment with Newcourt continued under "substantially the same terms and conditions" as they existed prior to the acquisition, see Pl.'s Exs. E, Q and S, and whether these alterations impacted Plaintiff's compensation.  The Court reaches this conclusion notwithstanding Newcourt's citation to authority that an employee is not entitled to a specific bonus when language of the employment agreement was designed to place discretion regarding the bonus amount in the employer.  Siporin v. Adler, 364 Mich. 549 111 N.W.2d 848 (1961) (contract requiring employee to "depend solely on [employer's] reputation and fairness" as to amount of the bonus).

Newcourt did retain discretion with respect to the amount Plaintiff could receive; however, it did not retain unbridled discretion. Here, the language of the letter provides support for Plaintiff's claim that Defendants breached the salary agreement.  Under the terms articulated in the December 19, 1999 letter, Plaintiff was entitled to a "targeted annual bonus. . .equal to 75% of [his] base salary and would be payable if both [Plaintiff] and the company achieve certain target performance levels.  The amount of the bonus [Plaintiff] would receive may be higher or lower than the targeted amount, based upon your individual and the Company's performance."  Pl.'s Ex. G.  Further, under the terms articulated in the letter, the 1998 targeted annual bonus was to be finalized in conjunction with the Company's 1998 business plan.

Without question, Plaintiff would receive a bonus if he achieved certain target performance levels and the company did as well.  Although Plaintiff admits he did not

achieve his target performance level, in light of his assertion that he could not do so because many income-generating functions were removed from his authority, there is a question as to whether Defendant complied with the promises it made, particularly given its promise that Plaintiff's job would be substantially the same. Plaintiff is free to pursue his claim that his 1998 bonus should have been calculated as it was when he was employed by AT&T.

### C. Mitigation of damages

Finally, Defendants assert that they are entitled to summary judgment on their affirmative defense that Plaintiff's failure to make any effort to find employment that could be considered reasonable under the circumstances precludes an award of damages. Newcourt characterizes the relevant deposition testimony given by Plaintiff as inconsistent. Defendants claim Plaintiff altered his version of his health condition to reflect changes in the litigation. According to Newcourt, Plaintiff testified initially that he had been totally disabled and retired since his heart attack. He filed a worker's compensation claim because he could not work after his heart attack. Pl.'s Dep. at 56-7. After Plaintiff's ERISA claim failed, he changed his story and attempted to retract his earlier testimony by stating that he was never actually on total disability, and he could have returned to work See Pl.'s Dep. at 197. Since his termination, Plaintiff has never submitted a resume or application in an effort to secure employment. Id. at 198. His search has been limited to networking among friends. Therefore, Newcourt concludes that he is barred from recovering any damages.

In a breach of employment contract claim, "it is incumbent upon the [former employee] to use such means as are reasonable under the circumstances to avoid or minimize the damages. The person wronged cannot recover for any time of damage which could thus have been avoided." Morris v. Clawson Tank Co., 459 Mich. 256, 264, 587 N.W.2d 253 (1998) (internal citations omitted). One who fails to make such an effort loses the right to full back pay. Id. Nevertheless, mitigation of damages is an affirmative defense, and Newcourt bears the burden of proof.

Here, the Court finds that Newcourt has failed to satisfy its burden for two reasons. First, Newcourt's characterization of Plaintiff's testimony is not reflective of the deposition testimony as a whole. Second, Newcourt offers no evidence showing there were reasonably

similar positions available to Plaintiff.

## V. CONCLUSION

For the reasons stated above, the Court GRANTS in part and DENIES in part Defendants' motion for summary judgment. The Court concludes that Defendants are entitled to summary judgment only as to Plaintiff's claim that he could be terminated only for cause. The Court concludes that Defendants are not entitled to summary judgment on their claim that they did not breach the compensation agreement. Finally, the Court holds that Defendants are not entitled to summary judgment on their affirmative defense.

IT IS SO ORDERED.

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

Dated: July 27, 2005

## CERTIFICATE OF SERVICE

Copies of this Order were mailed to Timothy O. McMahon and Patrick F. Hickey on this date by ordinary mail and electronic filing.

s/Bernadette M. Thebolt
Deputy Clerk

13